**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| JANEAN MARIE ZORTMAN, | |
| Claimant, | No. 18-CV-4035-LTS |
| vs. | |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Commissioner. | |

_____

Plaintiff, Janean Marie Zortman ("Claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 13) and only summarize the pertinent facts here. This is an appeal from a denial of disability insurance benefits ("DIB"). Claimant was born on December 31, 1964. (AR[1] at 40.) Claimant has a high school education. (*Id.* at 20.) Claimant allegedly became disabled due to a back injury. (*Id.* at 197.) The original alleged onset of disability date was December 1, 2014 (*Id.* at 70, 169-70), which Claimant later amended to be December

_____

[1] "AR" cites refer to pages in the Administrative Record.

31, 2014, the date she turned fifty years old.  (*Id*. at 16, 39.)  Claimant filed an application for Social Security disability on March 23, 2015.  (*Id*. at 70, 169-70.)  Claimant was initially denied benefits on May 27, 2015.  (*Id*. at 96-99.)  Claimant filed for reconsideration on June 5, 2015 and the reconsideration was denied on June 18, 2015.  (*Id*. at 100, 107-08.)  Claimant filed a Request for Hearing on June 23, 2015.  (*Id*. at 107-08.)  A hearing was held in Omaha, Nebraska on April 28, 2017, where Claimant and the vocational expert both testified.  (*Id*. at 34-69.)

The ALJ entered an unfavorable decision on July 11, 2017.  (*Id*. at 13-33.)  On September 9, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision.  (*Id*. at 165-68.)  The Appeals Council found there was no basis to review the ALJ's decision on March 16, 2018.  (*Id*. at 1-3.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On April 6, 2018, Claimant timely filed her complaint in this Court.  (Doc. 1.)  All briefs were filed by October 8, 2018.  On October 9, 2018, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant

numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996)); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work

the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    The ALJ'S Findings

The ALJ made the following findings at each step regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 31, 2014, the amended alleged onset date. (AR at 18.)

At step two, the ALJ found that Claimant suffered from "the combined 'severe' impairment of multi-level lumbar degenerative disc disease, status post four lumbar surgeries." (*Id.*)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations. (*Id.* at 21.) Specifically, the ALJ considered listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine resulting in compromise of a nerve root or the spinal cord). (*Id.*)

At step four, the ALJ found that Claimant had the RFC to perform light work with the following limitations:

> [S]he cannot use ladders, ropes, or scaffolds and can perform no more than occasional balancing, stopping, kneeling, crouching, crawling, or climbing of ramps or stairs. She should avoid concentrated exposure to temperature extremes, vibration, and workplace hazards, which are defined as unprotected heights or close proximity to dangerous, moving mechanical parts. Additionally, the claimant will need to shift positions from sitting to standing or from standing to sitting every two hours for no more than five minutes without a need to leave her workstation.

(*Id.* at 22.) The ALJ also found that Claimant was capable of performing past relevant work as a customer service manager and as a general merchandise salesperson, as this work is not precluded by Claimant's RFC. (*Id.* at 26.)

At step five, the ALJ found in the alternative that there were other jobs that existed in significant numbers in the national economy that Claimant could also perform, including cashier II, cafeteria attendant, and counter clerk. (*Id.* at 27.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 28.) The disputes in this case arise at steps four and five.

**B.** **The Substantial Evidence Standard**

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*,

349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## C.  Duty to Develop the Record

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  Because the ALJ has no interest in denying Social Security benefits, the ALJ must act neutrally in developing the record.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988)) (bracketed information added) .

## III.   DISCUSSION

Claimant alleges the ALJ committed reversible error by (1) improperly evaluating the opinions of Claimant's treating physicians; (2) improperly evaluating Claimant's subjective complaints; (3) failing to complete a fair hearing; and (4) relying upon a defective hypothetical.  (Doc. 15 at 3-4.)  I will address each of Claimant's arguments in turn.

## A.    The ALJ properly evaluated the opinions of Claimant's treating physicians.

Claimant argues that the ALJ improperly weighed the opinion evidence in her case.  Specifically, Claimant takes issue with the ALJ giving controlling weight to the opinions of the state agency physicians who reviewed her record over the opinions of her treating physicians.  Dr. Lukken and Dr. Garred are classified as Claimant's treating physicians because both doctors have provided Claimant with "medical treatment or evaluation" and have had "an ongoing treatment relationship" with Claimant. 20 C.F.R. § 404.1527(a)(2).

An ALJ's RFC must ordinarily be supported by a treating or examining source opinion to be supported by substantial evidence. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (noting internal citations omitted)). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record as a whole.[2] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and brackets omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted).

When a treating physician's medical opinion is not given controlling weight, the following factors will be applied to determine the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of

---

[2] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. *See* 20 C.F.R. § 404.1527. However, Claimant's claim was filed on November 19, 2014, so the old regulations apply. *See id.*

the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

### 1. Dr. Lukken's Opinion

Dr. Lukken is Claimant's pain management doctor. (AR at 44, 205.) Dr. Lukken has been treating Claimant since 2011.[3] (*Id.* at 205.) Dr. Lukken completed a "Medical Opinion Re: Ability to Do Work-Related Activities" on April 10, 2017. (*Id.* at 663.) Dr. Lukken opined that Claimant is incapable of performing a full-time job that is eight hours per day, five days per week, on a regular and continuing basis. (*Id.*) In his opinion, Claimant's maximum ability to stand and walk during an 8-hour workday, with normal breaks, would be less than two hours. (*Id.*) Under those same circumstances, Claimant's maximum ability to sit would also be limited to less than two hours. (*Id.*) She would need the freedom to shift between sitting or standing, and to lie down at unpredictable times during the workday. (*Id.*) Additionally, the maximum amount Claimant could lift and carry on both an occasional and frequent basis would be less than ten pounds. (*Id.*) Lastly, in Dr. Lukken's opinion, Claimant's impairment, symptoms, and treatment, would cause Claimant to be absent from work more than three times per month. (*Id.*)

The ALJ considered Dr. Lukken's opinion but was "not entirely persuaded" by the opinion because Dr. Lukken's chart notes generally did not include significant abnormal clinical findings nor consistent findings of weakness. (*Id.* at 26.) The ALJ also noted that Dr. Lukken's pain management notes contained several references to significant improvement in the Claimant's symptoms. (*Id.*) The ALJ believed Dr. Lukken's August 2015 note that he "would be willing to assist" Claimant in her pursuit of disability benefits strongly suggested that his April 2017 opinion represented more of

---

[3] The record only contains medical records from Dr. Lukken beginning in 2013. Thus, records from the first two years of Claimant's treatments with Dr. Lukken are missing from the record.

an accommodation, rather than an objective assessment of Claimant's functional limitations. (*Id.*) Therefore, the ALJ did not give Dr. Lukken's opinion controlling weight. (*Id.*) In fact, the ALJ did not assign any specific weight to the Dr. Lukken's opinion. Instead, giving "greatest weight" to the opinions of the state agency physicians who reviewed Claimant's record, and supplementing their conclusions in the RFC with an opportunity for Claimant to change positions every two hours for no more than five minutes at a time as an accommodation "of [Claimant's] allegation of difficulty maintaining prolonged positions." (*Id.*)

### a. Analysis

The opinion of Dr. Lukken should not be given controlling weight because it is "inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c). The proper weight to give this non-controlling physician opinion is determined through an analysis of the six factors listed above.

### i. Length and Frequency of the Treatment Relationship

"When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the medical source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i). According to treatment notes, Claimant visited Dr. Lukken eighteen times from November 2013 to April 2017. (*see* AR at 545-614, 664-670.)[4] The length of the treatment relationship and the frequency of examination indicate that Dr. Lukken could have obtained a longitudinal picture of Claimant's impairment. This factor weighs in favor of giving Dr. Lukken's opinion substantial weight.

---

[4] Claimant also saw a physician assistant within that same office, Mr. Nicholas E. Fernando, twenty-eight times for medication refill and review during that same time frame. (*Id.*)

### ii.     Nature and Extent of the Treatment Relationship

"The more knowledge a treating source has about [a claimant's] impairment(s) the more weight the [ALJ] will give the source's opinion." 20 C.F.R. § 404.1527(c)(2)(ii).  The ALJ "will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered." *Id.* Claimant saw Dr. Lukken for pain management.  (AR at 44.)  Dr. Lukken would prescribe and refill chronic pain medications and would occasionally perform a trans-foraminal epidural steroid injection procedure on Claimant.  (*Id.* at 545-614, 664-670.) During these visits, Dr. Lukken or the physician assistant, Mr. Fernando, would first speak with Claimant about her pain and record that narrative in the treatment notes. Then, Dr. Lukken or Mr. Fernando would examine Claimant and document the physical findings.   These findings sometimes addressed, among other things, Claimant's neurological and musculoskeletal system, specifically the cervical spine and lumbosacral spine, but did not note abnormal findings or weakness.  (*Id.* at 546, 561, 572, 590, 605, 615, 671-72.)  Because the treatment notes lack abnormal findings, Dr. Lukken's opinion regarding Claimant's abilities rests mainly upon Claimant's self-reports of problems and complaints of pain recorded in the narrative portion of the treatment notes.  Thus, the knowledge Dr. Lukken has about Claimant's impairment is largely derived from subjective complaints that the ALJ determined to not be credible and, therefore, this factor weighs in favor of affording the opinion limited weight.

### iii.     Supportability

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3).  "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Circuit 2006).  The "Ability to do Work-Related Activities" form that Dr. Lukken

completed asks for the patient's diagnosis, symptoms, treatment, and medical findings. (AR at 663.)  Dr. Lukken listed the diagnosis of "post laminectomy syndrome" and described Claimant's symptoms as back pain, leg pain, buttock pain, and right leg weakness.  (*Id.*)  Dr. Lukken's treatment notes reflect findings of pain, however, the treatment notes consistently state there is "no leg weakness." (*Id.* at 545, 560, 571, 589, 560, 670.)  The treatments noted on the form are medication and intermittent injections. (*Id* at 663.)  Dr. Lukken and Dr. Lukken's physician assistant, Mr. Fernando, repeatedly indicate in their treatment notes that the intermittent injections improved Claimant's pain (*Id.* at 442, 462, 470, 474, 486, 585, 589, 666) and that medications have helped  (*Id.* at 548, 552, 560, 567, 571, 578, 585, 595).

The medical findings listed on the form are status post multilevel fusion and weakness on exam.  (*Id.* at 663.)  However, there is just one treatment note during this more than three-year period in which Dr. Lukken references a finding of weakness.  (*Id.* at 670.)  This treatment note is dated April 10, 2017, which is the same date that Dr. Lukken completed the Ability to do Work-Related Activities form.  (*Id.* at 663, 670.) However, Dr. Lukken's other treatment notes state that Claimant's cervical spine showed a full range of motion, and Claimant's lumbosacral spine motion, gait, and stance were all normal.  (*Id.* at 546, 561, 572, 590, 671-72.)  Dr. Lukken also notes that Claimant's "musculoskeletal strength and sensation in the lower extremities was grossly intact and no deficits were appreciated."  (*Id.* at 471, 605, 615.)

Dr. Lukken's treatment notes do not support his conclusion that Claimant is incapable of performing a full-time job.  Therefore, this factor should weigh in favor of giving this opinion limited weight.  Moreover, decisions regarding a claimant's ability to work are left to the sole discretion of the Commissioner.  *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Stormo*, 377 F.3d at 806).

### iv. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Dr. Lukken's opinion is inconsistent with treatment notes from Claimant's visits with family treating physician, Dr. Garred. Although Dr. Garred's notes indicate back pain, weakness was not observed during visits. (AR at 522, 528.) The treatment notes indicate Claimant's strength was rated a 5/5 for normal muscle strength for all muscles. (*Id.*)

Furthermore, the opinion is inconsistent with Claimant's own statements regarding the effectiveness of treatment. Claimant consistently reported that the injections reduced her pain by up to 50%. (*Id.* at 469, 483, 603, 614, 674.) Claimant also consistently stated that her medications were helpful (*Id.* at 486, 548, 552, 556, 567, 571, 578, 589, 595, 609) and in October 2016, she said her pain was "manageable with her meds." (*Id.* at 552). These statements referencing symptomatic relief after treatment are inconsistent with Dr. Lukken's opinion of disabling limitations. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Dr. Lukken's opinion is inconsistent with the treatment notes of Dr. Garred and Claimant's own statements that treatments improve her symptoms. These inconsistencies significantly undermine Dr. Lukken's opinion and therefore weigh in favor of giving the opinion limited weight.

### v. Specialization

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Lukken treats Claimant for pain management. (AR at 44, 205.) The ALJ found that Claimant suffers

from a combined severe impairment of multilevel lumbar degenerative disk disease, status post four lumbar surgeries. (*Id.* at 18.) Although Dr. Lukken is not a spine specialist, his knowledge of pain management may fall within the specialization factor. I find that this factor weighs slightly in Claimant's favor.

### vi.    Other Factors

"Other factors" can include information claimants or others bring to the Social Security Administration's ("SSA") attention, or of which it is aware, which tend to support or contradict a medical opinion. 20 C.F.R. § 404.1527(c)(6). Claimant contends the fact that the state agency doctors did not see Dr. Lukken's opinion before rendering their opinions should be another factor to consider. (Doc. 15 at 6-7.) The state agency physicians signed their opinions in May 2015 (AR 82) and June 2015 (AR 95.) Therefore, the state agency physicians did not review anything in the record after June 2015, including Dr. Lukken's April 2017 opinion. As Claimant notes, the state agency physicians reviewed exhibits 1F through 9F and a portion of 10F (AR at 86) but did not see the rest of exhibit 10F and exhibits 11F through 13F. (Doc. 15 at 8.) This is not unusual. In fact, it is more common than not in Social Security cases. *See Minney v. Berryhill*, No. C16-175-LTS, 2018 WL 659860, at *8 (N.D. Iowa Feb. 1, 2018) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.")).

Accordingly, while the two-year gap between the state agency doctors' opinions and the opinion of Dr. Lukken in this case is less than ideal, is not cause for reversal. The exhibits that were not reviewed by the state agency doctors neither assist Claimant's contentions nor demonstrate a change in Claimant's impairment. The treatment notes

from the Siouxland Pain Clinic (Exs. 10F, 13F) continued to state that Claimant's "musculoskeletal strength and sensation in the lower extremities was grossly intact and no deficits were appreciated" (AR at 605, 615) and that Claimant's lumbosacral spine motion, gait, and stance were all normal. (*Id.* at 546, 561, 572, 590, 671-72.) In terms of Claimant's subjective pain, these later treatment notes reflected Claimant's reports that the injections and medication were helping. (*Id.* at 442, 462, 470, 474, 486, 548, 552, 560, 567, 571, 578, 585, 589, 595, 665-66, 674.)

Similarly, for the most part, the treatment notes from the Burgess Clinics in Exhibit 11F (*Id.* at 632-662) do not help Claimant. These treatment notes reflect that she visited the clinic for a dog bite, shoulder pain, and a flu shot. (*Id.* at 632-48.) On March 23, 2015, Claimant returned to the Burgess Clinic complaining of back pain. Her doctor continued her then-present therapy and ordered an MRI.[5] (*Id.* at 649-52.) The March 25, 2015 MRI showed mostly normal results with "evidence of fusion with satisfactory decompression, no residual stenosis" throughout Claimant's spine. (*Id.* at 656-57.) At L2-3, there was "a little asymmetry related to mild levoscoliosis, but no significant disk disease," and the L3 segment actually showed resolution of spinal stenosis that had been present on the comparison study. (*Id.* at 656.) Although there were "mild degernerative facet changes at L2-3 with mild hypertrophy," which was a little greater than on the comparison study, there was no stenosis and "adjacent disk level L2-3 show[ed] no

---

[5] The Burgess Clinic treatment notes are unusual insofar as the notes seem to keep a running boilerplate log of previous symptoms/discussions. (AR at 632-48.) Therefore, if one reads every word, the reader could get the impression that a patient had a flu shot on October 30, 2015 (AR at 642, 643), January 19, 2016 (*Id.* at 639), and September 19, 2016 (*Id.* at 634) or that Claimant would need a pap smear and possible surgery referral at every visit (*Id.* at 635, 639, 643, 648). The key to reading these unusual treatment notes is to read the beginning of every entry, "History of Present Illness" and then to jump ahead a page to the "Vital Signs," "Physical Exam," and "Assessment & Plan" sections, which includes information about that day's encounter.

significant degenerative disk changes." (*Id.* at 656-57.) Therefore, no objective medical findings from the Burgess Clinics reflected a change in Claimant's condition.

Here, the time lapse between the state agency doctor opinions and the opinion of Dr. Lukken should not influence the weight given to the physician opinions. It was solely within the discretion of the ALJ to decide whether the portion of the record not reviewed by the state agency doctors would have changed their opinions. SSR 96-6p. Since the state agency doctors reviewed the available record before rendering their decisions and the remaining record did not document significant changes in Claimant's condition during the gap, I find that the ALJ did not err in making this decision.

Finally, Claimant argues that "medical treatment [evidence] from after May 2015 up through April 10, 2017, contained in Exhibits 10F, 11F, 12F, and 13F were ignored by the ALJ." (Doc. 15 at 8.) This argument is without merit. The ALJ cited Exhibits 10F, 11F, and 13F in the Decision. (*See* AR at 18-21, 24-26.) Exhibit 12F is Dr. Lukken's opinion, which the ALJ discussed and which the ALJ was not "entirely persuaded by." (*Id.* at 26.) Consequently, I find that these exhibits were not ignored by the ALJ.

### b.    Conclusion

After analyzing the foregoing six factors, I find that the ALJ conducted a proper analysis of Dr. Lukken's opinion and substantial evidence supports the ALJ's decision. Therefore, I recommend that the District Court affirm the ALJ's decision on this issue.

### 2.    Dr. Garred's Opinion

Dr. Garred is Claimant's family physician. (AR at 202.) Dr. Garred has been treating Claimant for all aspects of her health since 1984. (*Id.*) In relation to Claimant's alleged impairment, Dr. Garred has prescribed pain medication, and referred Claimant to various professionals for treatment. (*Id.*) Dr. Garred provided two medical opinion letters, dated February 7, 2013 and May 4, 2015. (*Id.* at 517, 519.)

In the February 2013 letter, Dr. Garred noted Claimant's history of lower back issues after a lumbar laminectomy and revision surgeries. (*Id.* at 519.) He stated Claimant "continues to have symptomatology both down the right and left legs" and "at times she has left buttock pain and has paresthesia on the right heel." (*Id.*) Additionally, Claimant has tried conservative treatment methods, such as epidural floods and physical therapy, "to no avail." (*Id.*) Regarding Claimant's abilities, "she does have a little difficulty with walking with pain. No trouble with the upper extremities. Her moderate activities are limited quite a bit. Lifting and carrying is limited. Climbing stairs is limited . . . Stooping is not good. Climbing is not good. Kneeling is not good nor crawling." (*Id.*) He notes that Claimant "has been accommodated at work by them designing her a desk where she can stand." (*Id.*) Dr. Garred opined "as far as work environment restrictions, there should not be any" however, Claimant's "pace may be compromised due to her pain" and "with her pain she is limited in what she can do at certain times while on the job." (*Id.* at 519-20.)

Dr. Garred's May 2015 letter contains essentially the same observations and opinions regarding Claimant's abilities as the 2013 letter. (*See id.* at 517-18.) The letter adds that Claimant has since then attempted therapy and tried clinic injections for the pain. (*Id.* at 517.) In his letter, Dr. Garred also relays the findings from a March 2015 MRI, namely noting the "satisfactory appearance" of the various fusion sites from previous surgeries, and that although there was mild hypertrophy[6], there were no significant changes. (*Id.*)

The ALJ reviewed Dr. Garred's opinions but gave them little weight because the "statements generally fail to articulate specific functional limitations in terms of the

---

[6] "'Hypertrophy' is defined as a '[g]eneral increase in bulk of a part or organ, not due to tumor formation.'" *Wewer v. Astrue*, No. 2:07-cv-2054, 2008 WL 2693182, at *8 n.7 (W.D. Ark. July 2, 2008) (quoting *Hypertrophy*, PDR MEDICAL DICTIONARY 929 (3d ed. 2006)).

claimant's physical capacity" and the suggested generalized limitations appeared to be "at odds with the longitudinal pain management notes reflecting quite effective symptomatic relief." (*Id.* at 25-26.) The ALJ also cited a statement regarding Claimant being able to return to her job from Exhibit 2F, page four, that the ALJ attributed to Dr. Garred and used to further justify giving Dr. Garred's opinion little weight. (*Id.* at 26.) Upon further review of the record, however, this statement was wrongly attributed to Dr. Garred, as it was Dr. Michael Longley who wrote and electronically signed the entry referred to by the ALJ. (*See id.* at 368.)

### a. Analysis

The opinion of Dr. Garred also should not be given controlling weight because it is "inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c). The proper weight to give this non-controlling physician opinion will be determined through an analysis of the six factors previously listed.

### i. Length and Frequency of the Treatment Relationship

"Generally, [ALJs] give more weight to the medical opinions from [a claimant's] treating sources. . . . when the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i). Dr. Garred has been Claimant's family physician for over 30 years. (AR at 519.) According to treatment notes in the record, Claimant visited Dr. Garred a few times each year. (*Id.* at 521-44, 632-52.) Even though Dr. Garred also treated Claimant for health concerns unrelated to her alleged impairment, the length of this treatment relationship and frequency of physical examinations indicate Dr. Garred could have obtained a longitudinal picture of Claimant's impairment. This factor weighs in favor of giving his opinion more weight.

### ii. *Nature and Extent of the Treatment Relationship*

"The more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). The ALJ "will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered." *Id.* Beyond performing physical examinations of Claimant at every visit and discussing her subjective pain complaints, it appears Dr. Garred mainly referred Claimant to other providers for her back pain. For instance, Dr. Garred referred Claimant to the pain management clinic that Dr. Lukken works at (AR at 202), to physical therapy (*Id.*), and to the University of Iowa Hospitals and Clinics for a consultation about having another back surgery in September 2012 (*Id.* at 504). At times, Dr. Garred would order an MRI for Claimant and later review the results. (*see id.* at 524.) The nature and extent of Dr. Garred's treatment relationship with Claimant for her alleged impairment consists mainly of referrals and therefore this factor weighs against giving Dr. Garred's opinion much weight.

### iii. *Supportability*

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Garred referred Claimant to the University of Iowa for an opinion as to whether she needed a fourth surgery. (AR at 504.) Dr. Garred appears to have relied on the notes from the University of Iowa evaluation as support for his February 2013 opinion, as he states "enclosed find a good report that is included from the University of Iowa where she just went and had a recent evaluation in September of last year. This documents most of her capabilities." (*Id.* at 520.) Also, the limitations stated in Dr. Garred's letter come directly from this University of Iowa evaluation. (*See id.* at 504-05, 519.) This evaluation occurred before Claimant's fourth surgery, which was meant to address her

pain symptoms, so it is unclear if this reflects her current post-surgery limitations. Additionally, Dr. Garred's listed limitations come from the reports "Patient-Entered History" rather than the "Objective" portion of the evaluation. (*Id.*) Dr. Garred's opinion as to Claimant's limitations is therefore based on Claimant's own reports as to her limitations, rather than an objective evaluation and thus the opinion lacks adequate support and may be afforded little weight.

### iv. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). The ALJ claimed Dr. Garred's opinion was inconsistent with both the pain management notes from Dr. Lukken's office and Dr. Garred's own prior notes. (AR at 26.) According to the ALJ, "while some generalized limitations were suggested in terms of her ability to sustain [pace][7] given her pain levels, that suggestion appears at odds with the longitudinal pain management notes reflecting quite effective symptomatic relief." (*Id.* at 25-26.) The pain management notes indeed reflect that medication and the injections improved Claimant's pain. (*Id.* at 442, 462, 470, 474, 486, 548, 552, 560, 567, 571, 578, 585, 589, 595, 666.) Therefore, there are inconsistencies between Dr. Garred's opinion and the record as a whole and the opinion can be afforded less weight under this factor.

### v. Specialization

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of

---

[7] The ALJ actually wrote "her ability to sustain pain [sic] given her pain levels, . . ." (AR at 25-26). The ALJ was citing Dr. Garred's opinions at this point, which included the following sentence: "She can carry all these out and maintain attention concentration and pace; however pace may be compromised due to her pain." (*Id.* at 517, 519-20.) Therefore, I believe "pain" was a typographical error, and "pace" is the intended word.

a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Claimant suffers from a combined severe impairment of multilevel lumbar degenerative disk disease, status post four lumbar surgeries. (AR at 18.) Dr. Garred, as a family physician, does not specialize in this area and therefore his opinion can be given less weight based on this factor.

### b.    Conclusion

I find that the ALJ conducted a proper analysis of Dr. Garred's opinion and substantial evidence supports the ALJ's decision. Therefore, I recommend that the District Court affirm the ALJ's decision on this issue.

### B.    The ALJ properly evaluated Claimant's subjective complaints.

Claimant argues that the ALJ failed to properly evaluate her subjective complaints. It is difficult to ascertain from Claimant's brief an argument as to how the ALJ erred in his credibility findings. There are a total of four sentences in Claimant's brief that mention specific facts relating to Claimant;[8] specifically, that Claimant "is a hard worker," "has a strong work history having returned to work after her surgeries," "was making up to $70,742 in 2005, and has a strong earnings record," and "has had four back surgeries and consistently reported chronic back pain." (Doc. 15 at 9-10.) The remaining paragraphs quote the ALJ, recite Dr. Lukken's opinion, and cite various cases. (*See id.* at 8-11.) Most of the citations refer to cases where the ALJ did not discuss the *Polaski* factors. As best I can discern, Claimant is arguing that the ALJ erred by not discussing the *Polaski* factors before discrediting Claimant's subjective complaints of pain.

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the

---

[8] There is also one paragraph alleging that Claimant was not afforded a fair hearing, but as that is a separate argument from Claimant's credibility argument, that will be addressed in the next section.

impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b), (c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3)[9]. An ALJ is not required to "methodically" discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing Brown v. Chater,* 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

---

[9] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v), (vi).

In this case, the ALJ found at the first step that Claimant had medically determinable impairments that could reasonably be expected to cause her alleged symptoms. (AR at 25.) At the second step, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence in the record. (*Id.*) To support this determination, the ALJ noted Claimant received unemployment benefits during the end of 2014 and the first half of 2015 and applied for jobs until April 2017, even though she alleged a total disability onset date of December 31, 2014. (*Id.* at 23.) Also, Claimant stated that she was let go from her job in 2014 due to performance, but at other times admitted it was because her employer closed or because of a "low consensus." (*Id.*) Additionally, Claimant did not go to see a spine specialist in March 2015 as was recommended by her doctor. (*Id.* at 24.) Finally, the ALJ believed Claimant's treatment was working to manage her pain given her daily activities. Specifically, Claimant helps care for grandchildren, performs light chores and personal care, travels, can drive alone and shop, and did some farm work in 2016 while caring for her husband post-surgery. (*Id.* at 25.)

Claimant points to her strong work history, her four back surgeries, and consistent reports of back pain as support for the apparent argument that the ALJ did not discuss the *Polaski* factors when making the credibility determination. (Doc. 15 at 9-10.) Conversely, the Commissioner argues that the ALJ properly considered a number of relevant factors. (Doc. 16 at 4.) Specifically, the Commissioner states "the ALJ found that the objective evidence in combination with [Claimant's] activities, improvement with treatment, receipt of unemployment benefits, and search for work after her alleged onset date detracted from her claims of disability conditions." (*Id.* at 19.)

"The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "If the ALJ discredits a claimant's credibility and gives a good reason for

doing so, [the court] will defer to its judgment even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (citation omitted). Here, "[a]lthough the ALJ did not go through a step-by-step factors analysis, he did discuss the facts relevant to a proper inquiry into each of the factors." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

When considering the objective medical evidence in the record, the ALJ recognized that the evidence undoubtedly establishes a long-standing history of lumbar disc disease with an extensive surgical history. (AR at 23.) The ALJ also noted, however, that Claimant's allegations were inconsistent with the treatment notes on the record. (*Id.* at 24.) Indeed, the treatment notes indicated that Claimant's "musculoskeletal strength and sensation in the lower extremities was grossly intact and no deficits were appreciated" (*Id.* at 605, 615) and that Claimant's lumbosacral spine motion, gait, and stance were all normal. (*Id.* at 546, 561, 572, 590, 671-72.) Additionally, Claimant declined a referral to a spine specialist in March 2015. (*Id.* at 521.); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Regarding Claimant's work history, the ALJ acknowledged that Claimant returned to work after each of her back surgeries. (AR at 23.) Claimant indeed had a lengthy and successful work history before 2014. Claimant is correct that this "lengthy work history supports her subjective complaints of disabling pain. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (quoting *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998)). "Offsetting this work history, however, is the fact that [Claimant] was laid off from her position, rather than forced out due to her condition." *Id.*

As the ALJ noted, Claimant's receipt of unemployment benefits after her alleged disability onset date additionally hinders her claim. In order to receive these benefits,

Claimant had to confirm for the State that she was "able to work, [] available for work and [] earnestly and actively seeking work." Iowa Code § 96.4(3). Therefore, "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability." *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998). Applying for unemployment benefits "may be some evidence, though not conclusive" to negate a claim of disability. *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). Moreover, Claimant's "search for a new job after her layoff further evinces both a willingness and ability to work after she allegedly became disabled." *Milam*, 794 F.3d at 984-85. I find that the fact that Claimant applied to jobs for over a year after she allegedly became disabled calls into question the intensity and limiting effects of her pain.

The ALJ also listed several of Claimant's daily activities to evaluate her subjective complaints. These daily activities include preparing simple meals, performing light chores, going out alone to drive or shop, helping care for her grandchildren, and having no problems with personal care besides needing assistance getting in and out of the bathtub. (AR at 25.) The ALJ also highlighted specific occurrences that he factored into his analysis. Specifically, that Claimant stood on cement for a long period of time two months before her alleged onset of disability date, lifted her 23-pound grandchild in September 2014, assisted in caring for her infant grandchild in March 2014, cared for her husband post-surgery and did some farm work in spring of 2016, went down a slide with her grandchild in May of 2016, traveled to Orlando in September of 2016, and can travel in her Prius to places as far as Colorado. (*Id.*) The record contains evidence of each of these activities and occurrences, which detract from her claim. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.").

The ALJ also discussed Claimant's treatment and "noted that she has reported significant improvement in her symptoms with conservative treatment measures such as therapy and injections."[10] (AR at 23.) The ALJ's statement regarding Claimant's improvement is supported by the record as Claimant has stated that the intermittent injections improved her pain (*Id.* at 442, 462, 470, 474, 486, 585, 589, 666) and that medications have helped (*Id.* at 548, 552, 560, 567, 571, 578, 585, 595). The treatments Claimant receives appear to be effective and her beneficial responses to the treatments hinder her claim because "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Claimant also refers to her four back surgeries and consistent reports of chronic back pain as support for this argument. (Doc. 15 at 10.) The record is replete with Claimant's subjective complaints of pain. However, as the Commissioner notes, the inquiry is not whether Claimant experienced pain but rather the extent to which her symptoms affect her capacity to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(4); *see also Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) ("As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is.") (quotation omitted). The ALJ acknowledged Claimant's extensive surgical history (AR at 23) and accordingly determined that Claimant had a medically determinable impairment that could reasonably be expected to produce her alleged symptoms. (*Id.* at 25.) After finding that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence in the record, the ALJ determined Claimant's RFC and

---

[10] The ALJ neither mentioned the pain medication that Claimant is taking nor the side effects, and Claimant is not arguing that the medication and side effects should have been included in the analysis.

noted the limitations that take into account the reality of Claimant's symptoms (e.g., needing to shift positions every two hours). (*Id.* at 22, 25.)

In conclusion, I find that the ALJ adequately recognized and considered the analytical framework of *Polaski* and identified valid reasons for discrediting Claimant's subjective complaints. *See Tucker*, 363 F.3d at 783. Accordingly, I recommend that the District Court affirm the ALJ's decision on this issue.

## C.    *The ALJ completed a fair hearing.*

Claimant alleges the ALJ did not complete a fair hearing. Claimant argues the ALJ should have afforded Claimant "a chance to explain what was going on" before using parts of the medical records for the credibility findings. (Doc. 15 at 9.) Specially, Claimant takes issue with the ALJ stating Claimant performed "a little bit more farm work" and helped care for her grandchildren. (*Id.*) According to Claimant, the farm work was "less than 20 minutes, and did not involve any lifting." (*Id.*) The Commissioner counters that there is no record citation to support this statement and even so, "her ability to perform even 20 minutes of farm work is inconsistent with her claims of total disability." (Doc. 16 at 19.) Regarding caring for her grandchildren, Claimant asserts it consisted of "watching her grandchildren for a two hour period while they took their nap." (Doc. 15 at 9.) As the ALJ and the Commissioner point out, however, the record disproves this assertion. Claimant reported she aggravated her back from carrying and tending to her newborn grandchild (AR at 448); gave baths to, and changed the diaper of, her newborn grandchild (*Id.* at 451); and went down a slide with her grandchildren (*Id.* at 574).

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Jones v. Astrue, 619 F.3d 963*, 969 (8th Cir. 2010) (quotation omitted). However, "[w]here the ALJ's determination is based on all the evidence in the record, including

the medical records, observations of treating physicians and others, and an individual's own description of his limitations, the claimant has received a full and fair hearing." *Id.*

Claimant in this case received a full and fair hearing. The ALJ based his credibility findings on all the evidence in the record and provided specific references to the record as support. Claimant and Claimant's experienced attorney were on notice that the ALJ would decide the case based upon all the evidence presented, which included the testimony at the hearing and the admitted evidence in the record. (*See* AR at 36-37.) The ALJ also gave Claimant and Claimant's attorney ample opportunity at the hearing to explain any of the evidence before the ALJ. Claimant's attorney was afforded the opportunity to make an opening statement, which he did, (*Id.* at 38) and the ALJ asked Claimant at the end of the hearing if there was anything that she would like to add that had not already been discussed. (*Id.* at 68.) Claimant took advantage of the offer and made a statement. (*Id.*) Therefore, I find that Claimant's argument that the ALJ should have afforded her "a chance to explain what was going on" is without merit.

**D.    *The ALJ did not rely upon a defective hypothetical.***

Claimant lastly argues that the ALJ relied upon a defective hypothetical. The ALJ must assess the claimant's RFC and the demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). If the claimant can still perform her past relevant work, the claimant is not disabled. *Id.* To assist in this determination, "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 404.1560(b)(2).

"A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted). "A hypothetical question posed to the vocational expert is

sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Id.* "The hypothetical question must capture the concrete consequences of the claimant's deficiencies" but "may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (quotations omitted).

At the hearing for this case, the ALJ posed four hypothetical situations to the vocational expert ("VE"), Holly Berquist Neal. The second hypothetical presented an individual who could perform light work with postural and environmental limitations and who would need to shift between sitting and standing every two hours for no more than five times. (AR at 63-64.) These limitations became part of the ALJ's RFC. (*Id.* at 22.) To this hypothetical, the VE responded that the individual could perform Claimant's prior jobs and other jobs in the light category, such as a cashier, cafeteria attendant, and counter clerk. (*Id.* at 65.) The VE noted the position changes would align with regularly scheduled work breaks. (*Id.*) After accepting the testimony of the VE, the ALJ concluded that Claimant is capable of performing her past work as a customer service manager or as a general merchandise salesperson. (*Id.* at 27.) The ALJ also concluded, in the alternative, that Claimant can perform other work that exists in significant numbers in the national economy. (*Id.* at 28.) Claimant alleges the ALJ relied upon a defective hypothetical because the hypothetical did not include the limitations articulated in Dr. Lukken's opinion of Claimant having to miss three days of work per month and being unable to lift more than ten pounds. (Doc. 15 at 13.)

As discussed, the ALJ properly evaluated Dr. Lukken's medical opinion and concluded the opinion should be afforded little weight as it was inconsistent with the record as a whole. Therefore, the ALJ was not required to include the properly rejected alleged impairments from Dr. Lukken's opinion in the hypothetical. *See Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000) (holding that the ALJ was not required to include

in the hypothetical impairments from a doctor's opinion that the ALJ properly rejected). Instead, the ALJ acknowledged that Claimant had additional limitations that impeded her ability to perform the requirements of the "light work" level. (AR at 27.) "To determine the extent to which these limitations [eroded] the unskilled light occupational base, [the ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (*Id.*) The ALJ then relied upon the VE's testimony that there are jobs in the national economy that Claimant can perform given those factors, noting that standard workplace breaks can accommodate Claimant's limitations as far as position changes. (*Id.* at 27-28.)

The ALJ included in the hypothetical "all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit." *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001) (citation omitted). The ALJ was not required to include the limitations from Dr. Lukken's opinion because that opinion was afforded little weight. Therefore, the testimony of the VE constitutes substantial evidence and the ALJ did not rely upon a defective hypothetical. Accordingly, I recommend that the District Court affirm the ALJ's decision on this issue.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ** and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as

well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

   **DONE AND ENTERED** this 14th day of May, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa