# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| JANEAN MARIE ZORTMAN, | | |
| | | No. C18-4035-LTS |
| Plaintiff, | | |
| vs. | | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | | |

---

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark R. Roberts, United States Magistrate Judge. *See* Doc. No. 19. Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Janean Marie Zortman's application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-34. Zortman filed timely objections (Doc. No. 20) and the Commissioner filed a response (Doc. No. 21). The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Zortman applied for disability insurance benefits on March 23, 2015, alleging disability beginning December 31, 2014, due to a back injury.  Doc. No. 19 at 1-2 (citing AR 70, 169-70, 197).  After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Zortman was not disabled as defined in the Act.  Zortman argues the ALJ erred by: (1) improperly evaluating the opinions of her treating physicians; (2) improperly evaluating her subjective complaints; (3) failing to complete a fair hearing; and (4) relying upon a defective hypothetical.  *Id*. at 7 (citing Doc. No. 15 at 3-4).  Judge Roberts addressed each argument separately.

In addressing the first issue, Judge Roberts noted that Zortman primarily took issue with the ALJ giving controlling weight to the opinions of the state agency physicians over the opinions of her treating physicians – Dr. Lukken and Dr. Garred.  *Id*.  With regard to Dr. Lukken, Judge Roberts noted that he has been treating Zortman since 2011 as her pain management doctor.  *Id*. at 9.  He provided a medical opinion dated April 10, 2017, in which he opined that Zortman was incapable of performing full-time work.  *Id*.  He concluded her maximum ability to stand and walk during an 8-hour workday with normal breaks would be less than two hours.  *Id*.  He also found that Zortman's maximum ability to sit would be less than two hours.  *Id*.  He noted she would need to be able to shift from sitting to standing as needed and would need to lie down at unpredictable times during the workday.  *Id*.  The maximum amount she could lift and carry on an occasional

and frequent basis would be less than 10 pounds. *Id.* He also found she would be absent from work more than three times per month due to her impairment, symptoms and treatment. *Id.*

The ALJ was "not entirely persuaded" by Dr. Lukken's opinion, stating that his chart notes did not include significant abnormal clinical findings or consistent findings of weakness. *Id.* Indeed, his notes contained several references to significant improvement in her symptoms. *Id.* The ALJ also cited an August 2015 note in which Dr. Lukken indicated he "would be willing to assist" Zortman in her pursuit of disability benefits. The ALJ concluded this suggested that Dr. Lukken's opinion was more of an accommodation than an objective assessment of her functional limitations. Therefore, the ALJ did not give Dr. Lukken's opinion controlling weight – or any specific weight for that matter. *Id.* at 10. Instead, he gave "greatest weight" to the opinions of the state agency physicians who reviewed the record and concluded Zortman would need to change positions every two hours for no more than five minutes at a time. *Id.*

Judge Roberts concluded Dr. Lukken's opinion was not entitled to controlling weight because it was "inconsistent with the other substantial evidence in the record" and analyzed it pursuant to the six factors in 20 C.F.R. § 404.1527(c)(2). *Id.* at 10-16. These include: (1) the length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization and (6) other factors. Based on these factors, he concluded the ALJ's analysis of Dr. Lukken's opinion was supported by substantial evidence.

With regard to Dr. Garred's opinion, Judge Roberts noted that he is Zortman's family physician and has been treating her in all aspects of her health since 1984. In relation to her alleged impairment, Dr. Garred prescribed pain medication and referred Zortman to various professionals for treatment. *Id.* at 16. He provided two medical opinion letters dated February 7, 2013, and May 4, 2015. *Id.*

In the February 2013 letter, Dr. Garred explained Zortman's history of lower back issues after a lumbar laminectomy and revision surgeries. *Id.* at 17. He also explained

her symptoms and the various treatments she has tried.  *Id.*  He noted she has a little difficulty walking due to pain, no limits with her upper extremities and was limited in moderate activities, lifting and carrying, climbing stairs, stooping, climbing, kneeling and crawling.  *Id.*  He did not find any work environment restrictions, but noted that her pace could be compromised due to pain and her pain could also be expected to limit what she could do at certain times while on the job.  *Id.*  The May 2015 letter essentially contained the same observations and opinions.  *Id.*  Dr. Garred noted that she has attempted therapy and tried clinic injections for her pain.  *Id.*  He also noted that a March 2015 MRI showed "satisfactory appearance" of various fusion sites from previous surgeries and although there was mild hypertrophy, there were no significant changes. *Id.*

Judge Roberts noted the ALJ gave Dr. Garred's opinions little weight because they failed to articulate specific functional limitations and the generalized limitations he provided were at odds with the treatment notes indicating Zortman had experienced effective symptomatic relief.  *Id.* at 17-18 (citing AR 25-26).  The ALJ also cited a statement that he attributed to Dr. Garred regarding Zortman's ability to return to work and used that statement to further justify giving Dr. Garred's opinion little weight.  *Id.* at 18.  Judge Roberts noted that this statement was wrongly attributed to Dr. Garred and was actually a statement by Dr. Michael Longley.

Judge Roberts agreed that Dr. Garred's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence in the record.  He reviewed the opinion under the six factors in 20 C.F.R. § 404.1527(c)(2) and concluded the ALJ's evaluation of that opinion was supported by substantial evidence.  *Id.* at 18-21.

Next, Judge Roberts considered the ALJ's evaluation of Zortman's subjective complaints.  He noted Zortman's challenge to this aspect of the ALJ's decision was not entirely clear, but that it appeared she was arguing the ALJ erred by not discussing the

*Polaski*[2] factors prior to discrediting her subjective complaints of pain. *Id.* at 21. Zortman cited her strong work history, her four back surgeries and consistent reports of back pain as support for why the ALJ should have found her complaints credible when evaluating the *Polaski* factors. *Id.* at 23. Judge Roberts noted the ALJ discounted Zortman's subjective complaints based on their inconsistency with the treatment notes and noted this was supported by the record, which showed that her "musculoskeletal strength and sensation in the lower extremities was grossly intact and no deficits were appreciated" and that her lumbosacral spine motion, gait and stance were all normal. *Id.* at 24 (citing AR 605, 615, 546, 561, 572, 590, 671-72). Zortman had also declined a referral to a spine specialist in March 2015. *Id.* (citing AR 521).

Judge Roberts pointed out that the ALJ had considered Zortman's work history, but noted her positive work history was diminished by the fact she was laid off rather than forced out due to her condition. The ALJ also noted her receipt of unemployment benefits after her alleged onset date hindered her claim because she had to represent that she was able and available to work and actively seeking work in order to receive those benefits. *Id.* at 24-25. Judge Roberts cited case law in which this has been recognized as a legitimate reason to discount a claimant's allegations of a disabling condition. *Id.*

Judge Roberts next considered the ALJ's evaluation of Zortman's daily activities as a reason for discrediting her subjective complaints. These daily activities included preparing simple meals, performing light chores, going out alone to drive or shop, helping care for her grandchildren and having no problems with personal care aside from needing assistance getting in and out of the bathtub. *Id.* at 25 (citing AR 25). The ALJ also cited specific occurrences that he found indicated Zortman's limitations were not as severe as alleged. For instance, she stood on cement for a long period of time two months before her alleged onset date, lifted her 23-pound grandchild in September 2014, assisted in caring for her infant grandchild in March 2014, cared for her husband post-surgery

---

[2] *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

and did farm work in spring 2016, went down a slide with her grandchild in May 2016, traveled to Orlando in September 2016 and traveled long distances in the car. *Id.* Judge Roberts cited case law acknowledging that acts inconsistent with a claimant's assertion of disability reflect negatively on her credibility. *Id.* (citing *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ's analysis of Zortman's credibility also included discussion of Zortman's treatment. He noted that she had reported significant improvement in her symptoms with conservative treatment measures such as therapy and injections. *Id.* at 26. Judge Roberts noted this reason was supported by the record. *Id.* To the extent Zortman argues her four back surgeries and consistent reports of back pain support her subjective allegations, Judge Roberts noted that the relevant question was the extent to which her symptoms affected her capacity to perform basic work activities. *Id.* He noted that the ALJ had acknowledged Zortman's surgical history, but that his RFC assessment included limitations that took into account the reality of her symptoms. *Id.* at 26-27. Ultimately, Judge Roberts concluded that the ALJ adequately considered the *Polaski* factors in analyzing Zortman's subjective complaints.

Judge Roberts next considered Zortman's argument that the ALJ had not completed a fair hearing because he should have allowed her to more fully explain the extent of her daily activities if he was going to use them as a basis to discount her subjective allegations. *Id.* at 27. She contends that the farm work and caring for her grandchildren, as cited by the ALJ, were very limited. Judge Roberts concluded Zortman had received a full and fair hearing and that the ALJ based his credibility findings on all the evidence in the record. *Id.* at 28. He noted Zortman and her attorney were aware that the ALJ would base his decision on all of the evidence presented, which included the testimony at the hearing and the admitted evidence in the record. *Id.* He reasoned that the claimant and her attorney had ample opportunity at the hearing to explain any evidence before the ALJ. *Id.* Indeed, Zortman's attorney was permitted (and did) make an opening statement and the ALJ asked Zortman at the end of the hearing if there was anything she

would like to add that had not already been discussed. Zortman did make a statement. Judge Roberts concluded this argument was without merit.

Finally, Judge Roberts considered Zortman's argument that the ALJ relied on a defective hypothetical. Judge Roberts explained that the ALJ posed four hypothetical situations to a vocational expert (VE). *Id.* at 29. The second hypothetical included an individual who could perform light work with postural and environmental limitations who would need to shift between sitting and standing every two hours no more than five times. *Id.* The limitations in this hypothetical ultimately aligned with the ones adopted in the ALJ's RFC determination. *Id.* The VE concluded that such an individual could perform Zortman's prior jobs and jobs in the light category, such as a cashier, cafeteria attendant and counter clerk. *Id.* The VE noted the need to shift positions would align with regularly scheduled work breaks. *Id.* The ALJ concluded that Zortman was capable of performing her past work as a customer service manager or a general merchandise salesperson. *Id.* Alternatively, the ALJ found she could perform other work that exists in significant numbers in the national economy. Zortman argues the ALJ erred in relying on the second hypothetical because it did not include Dr. Lukken's opinion that Zortman would have to miss three days of work per month and was unable to lift more than 10 pounds. *Id.*

Because Judge Roberts had already concluded the ALJ did not err in evaluating Dr. Lukken's medical opinion, he stated the ALJ was not required to include the properly rejected limitations from Dr. Lukken's opinion in the hypothetical to the VE. *Id.* He found that the limitations the ALJ included in the hypothetical were supported by the record and that other limitations that were left out were properly excluded for the reasons stated by the ALJ. Therefore, Judge Roberts concluded the VE's testimony constituted substantial evidence and the ALJ did not rely upon a defective hypothetical. For all of these reasons, Judge Roberts recommends that I affirm the ALJ's decision and dismiss Zortman's case with prejudice.

## IV.   DISCUSSION

Zortman objects to Judge Roberts' R&R based on the following objections:

- The [R&R] errs in rejecting the opinion of Dr. Lukken and not giving it controlling weight

- Given the conclusions reached by Dr. Lukken, if it is not rejected and given weight, then the testimony of the Claimant is then supported by the opinion of Dr. Lukken and therefore credible

- If arguments I and II as set forth above are found to be correct, then Argument III follows suit in that the ALJ relied upon a defective hypothetical to the Vocational Expert

- The case should remand the matter in difference [sic] to the treating physician's opinion if the Court chooses not to reverse this matter

*See* Doc. No. 20 at 4.   As indicated above, Zortman's objections all depend (to some extent) on whether the treating physician opinions (specifically Dr. Lukken's opinion) are entitled to controlling weight.   She contends, at the very least, the matter should be remanded to give deference to those opinions.   *Id.*   I will consider the ALJ's evaluation of the medical opinions and Zortman's subjective complaints, followed by the hypothetical question to the VE in conducting my de novo review.

### A.   Medical Opinions

Zortman argues that the ALJ's statement that Dr. Lukken's opinion represented "more of an accommodation of the claimant's pursuit of disability benefits rather than objective assessment of her functional limitations" was not a good reason to discredit Dr. Lukken's April 2017 opinion.   She notes that in August 2015, Dr. Lukken stated that he was willing to assist Zortman with her disability application.   Zortman argues this comment should not be used as a reason to discredit Dr. Lukken's opinion two years later in 2017.   *Id.* at 5.   Zortman also argues that the regulations support her argument that

the need to shift positions every two hours (a limitation included in the ALJ's RFC finding) is a serious problem. *Id.* at 6 (citing Social Security Regulation 1.00 at 1.04(b)).[3]

With regard to Dr. Garred's opinions, Zortman argues the ALJ's decision to give his opinions little weight is based on a note in December 2012 that predated Zortman's alleged onset date by two years. *Id.* She also argues the ALJ rejected more recent examinations by Dr. Garred. Finally, Zortman argues the state agency opinions should not have been given more weight than the treating physician opinions because the state agency reviewers never saw Dr. Lukken's opinion. *Id.* at 7.

The Commissioner responds that Judge Roberts properly found that the ALJ gave Dr. Lukken's opinion less than controlling weight because it was inconsistent with substantial evidence in the record. Doc. No. 21 at 2. The Commissioner notes that Judge Roberts acknowledged that the length and frequency of Dr. Lukken's treatment relationship weighed in favor of giving his opinion substantial weight, but that despite this treatment relationship, the treatment notes did not support Dr. Lukken's opinion. *Id.* at 3. Because the treatment notes lacked abnormal findings and did not support his opinion, they were based on Zortman's self-reported complaints. The Commissioner argues the ALJ appropriately gave Dr. Lukken's opinion less weight given that he did not find Zortman's subjective complaints to be entirely credible. *Id.* The Commissioner

---

[3] Listing 1.04 address disorders of the spine. Listing 1.04(b) specifically addresses spinal arachnoiditis and indicates it is "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 at 1.04(b). The ALJ considered Listing 1.04, but there was a lack of evidence confirming the presence of spinal arachnoiditis. AR 21. Nonetheless, it is unclear what Zortman's argument is considering this Listing. She does not argue that there is evidence in the record to support this Listing. Moreover, the ALJ acknowledged Zortman would need to shift positions every two hours for no more than five minutes at a time without needing to leave her workstation and included this limitation in the RFC. To the extent Zortman argues this limitation prohibits work, that is refuted by the VE's testimony that Zortman could perform past relevant work and other jobs available in the national economy with such a limitation. *See* AR 26-27; AR 63-66. Zortman provides no other basis for challenging this finding outside of citing Listing 1.04(b).

also argues that Zortman's entire course of treatment does not change the analysis because Judge Roberts considered this in evaluating whether the ALJ's reasons for assigning Dr. Lukken's opinion less than controlling weight were supported by substantial evidence in the record as a whole. *Id.* at 3-4.

With regard to Dr. Garred's opinions, the Commissioner argues Judge Roberts appropriately found the ALJ provided good reasons for declining to give his opinion controlling weight. The Commissioner also noted that Dr. Garred's opinion does not provide support for Dr. Lukken's opinion. *Id.* at 4.

Finally, with regard to the state agency medical opinions, the Commissioner argues the fact that the state agency consultants did not have an opportunity to review Dr. Lukken's opinion is not cause for reversal because, as Judge Roberts reasoned, that opinion did not assist Zortman's contentions and did not demonstrate a change in her impairment. *Id.* at 4-5.

In reviewing the medical opinions in this case, I find it important to first clarify which regulations govern the evaluation of medical opinions. Zortman's claim was filed in March 2015. This means the medical opinion evidence in her case is subject to a different set of regulations than for claims filed after March 27, 2017. As of that date, the ALJ need not defer or give any specific evidentiary weight to certain medical opinions, but must consider the general "persuasiveness" of all medical opinions in the record (not only acceptable medical opinions) according to various factors. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after March 27, 2017) to 20 C.F.R. § 1527(c) (applicable to claims filed before March 27, 2017). Zortman's claim falls under 20 C.F.R. § 404.1527(c). This regulation provides:

> (2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c).

The ALJ stated the following with regard to Dr. Lukken's opinion:

The claimant's representative asserted in his prehearing brief that Dr. Lukken's opinion merits a finding of total disability in this matter (Exhibit 25E), and while I have considered the opinion contained in Exhibit 12F, I am not entirely persuaded by it. Dr. Lukken suggested that the claimant was generally unable to sustain even sedentary work activity and would be absent from work more than three times per month. However, his chart notes are generally devoid of significant abnormal clinical findings, and while his opinion referenced weakness on examination, his contemporaneous chart notes are generally silent as to consistent findings of weakness. Moreover, the pain management notes are replete with references to significant improvement in the claimant's symptoms, and Dr. Lukken's notation in August 2015 that he "would be willing to assist" the claimant in her pursuit of disability benefits (Exhibit 10F, p.64) strongly suggests that his April 2017 opinion represents more of an accommodation of the claimant's pursuit of disability benefits rather than an objective assessment of her functional limitations.

AR 26. The ALJ then discussed other medical evidence suggesting that while Zortman had limitations, she was not totally disabled and that her functioning and symptomatology had not deteriorated or worsened since 2014. *Id.*

With regard to Dr. Lukken's 2015 statement that he was willing to assist Zortman with her disability application being used as a reason to discount his 2017 opinion, I note that this was only one of several reasons the ALJ provided in declining to give Dr. Lukken's opinion controlling weight. The other reasons were based on the medical

evidence (including Dr. Lukken's own treatment notes) and whether that evidence supported the disabling limitations provided by Dr. Lukken. These are good reasons for declining to give Dr. Lukken's opinion controlling weight. *See Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) ("The ALJ noted the conflicting opinions regarding [the claimant's] ability to perform work activities and chose not to give controlling weight to [the treating psychiatrist's] opinion."); *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (noting that it is appropriate to discount a treating physician's opinion where the limitations "stand alone" on a form and were never mentioned in the physician's records or treatment nor supported by any objective testing or reasoning).

They are also supported by substantial evidence. *See* AR 489-90 (treating note dated March 10, 2015, indicating pain was at level 5, had good strength throughout and no weakness); AR 498 (treatment note date April 9, 2015, indicating it was a bad month with increased pain, which was exacerbated with prolonged standing or walking); AR 612-13 (treatment note dated June 30, 2015, indicating no new issues, "[p]atient did not appear uncomfortable," after receiving steroid injection at previous appointment); AR 609-10 (treatment note dated July 30, 2015, "[n]o weakness or problems in the lower extremities" and recommending core conditioning and regular exercise); AR 598-99 (treatment note dated October 27, 2015, "I want her to stay physically active which she is"); AR 581-82 (treatment note dated March 14, 2016, in which Zortman described her pain at a 10 while sitting down and after reviewing the pain scale revised her rating to a 5); AR 567-68 (treatment note dated July 5, 2016, stating "[m]oving all extremities fairly well" and "[m]edications are for the most part effective"); AR 545-65 (showing similar findings through January 1, 2017); AR 664-75 (showing similar findings through April 10, 2017). I agree with Judge Roberts that the ALJ's evaluation of Dr. Lukken's opinion is supported by substantial evidence in the record as a whole.

With regard to Dr. Garred's opinions, Zortman takes issue with the 2012 statement ("I think she could do that without injuring herself" in terms of returning to her job that was "primarily sitting" in nature), attributed to him because it was made two years before her alleged onset date. Judge Roberts correctly noted that this statement was made by Dr. Michael Longley, not Dr. Garred, but nonetheless found the ALJ's other reasons for not giving Dr. Garred's opinions controlling weight were supported by substantial evidence. I agree. Aside from the statement that was wrongly attributed to him, the ALJ evaluated Dr. Garred's opinions as follows:

> I have also considered the narrative statements offered by her primary care provider in February 2013 and May 2015 (Exhibit 9F). Those statements generally fail to articulate specific functional limitations in terms of the claimant's physical capacity, and while some generalized limitations were suggested in terms of her ability to sustain pain given her pain levels, that suggestion appears at odds with the longitudinal pain management notes reflecting quite effective symptomatic relief. Accordingly, those narrative statements in Exhibit 9F are given little weight.

AR 25-26. As Judge Roberts noted, Dr. Garred explained Zortman's history of lower back issues after a lumbar laminectomy and revision surgeries in his February 2013 letter. Doc. No. 19 at 17. He also explained her symptoms and the various treatments she has tried. *Id.* He noted she has a little difficulty walking due to pain, no limits with her upper extremities and was limited in moderate activities, lifting and carrying, climbing stairs, stooping, climbing, kneeling and crawling. *Id.* He did not find any work environment restrictions, but noted that her pace could be compromised due to pain and her pain could also be expected to limit what she could do at certain times while on the job. *Id.* The May 2015 letter essentially contained the same observations and opinions. *Id.* He noted that she has attempted therapy and tried clinic injections for her pain. *Id.* He also noted that a March 2015 MRI showed "satisfactory appearance" of various fusion sites from previous surgeries and although there was mild hypertrophy, there were no significant changes. *Id.*

The only other criticism Zortman has with regard to the ALJ's evaluation of Dr. Garred's opinions is that the ALJ rejected "later medical examinations by Dr. Garred." Doc. No. 20 at 6. However, she does not explain what these later medical examinations showed or what additional limitations they purportedly support. Having reviewed Dr. Garred's treatment notes in the record following his May 2015 opinion, I do not see anything that demonstrates a worsening of her condition or that would support greater limitations than those adopted by the ALJ. Indeed, none of the treatment notes after May 2015 indicate that Zortman sought treatment for back pain from Dr. Gerrad. *See* AR 641 (treatment note dated October 30, 2015, in which Zortman sought a flu shot); AR 637-40 (treatment note dated January 19, 2016, in which Zortman sought treatment for shoulder pain); AR 632-36 (treatment note dated September 19, 2016, in which Zortman reported stress related to her family and a dog bite to her thumb that she wanted to take care of before a trip to Orlando). I find the ALJ's evaluation of Dr. Gerrad's opinions is supported by substantial evidence in the record as a whole.

Finally, with regard to the state agency medical consultant opinions, Zortman argues these should not be entitled to great weight because the state agency medical consultants did not have the opportunity to review Dr. Lukken's opinion. Judge Roberts addressed this argument in his R&R and reasoned Dr. Lukken's opinion did not assist Zortman's contentions and did not demonstrate a change in her impairment. Doc. No. 19 at 14-15. Specifically, Dr. Lukken's treatment notes continued to state that her "musculoskeletal strength and sensation in the lower extremities was grossly intact and no deficits were appreciated" (AR 605, 615) and that her lumbosacral spine motion, gait, and stance were all normal (*Id.* at 546, 561, 572, 590, 671-72). *Id.* He also noted that with regard to Zortman's subjective pain, the later treatment notes reflected her reports that the injections and medication were helping. *Id.* (citing AR 442, 462, 470, 474, 486, 548, 552, 560, 567, 571, 578, 585, 589, 595, 665-66, 674).

I agree that the state agency medical consultants' lack of opportunity to consider Dr. Lukken's opinion is not cause for reversal or remand, especially considering the

ALJ's reasons for finding that opinion was not entitled to controlling weight. The state agency medical consultants did consider Dr. Garred's opinion and treatment records from Dr. Lukken, prior to May 2015 and June 2015 when they issued their respective opinions. *See* AR 71-95. As Judge Roberts noted, this is not unusual in Social Security cases. *See* Doc. No. 19 at 14. The later treatment records did not demonstrate a worsening of Zortman's condition. *Id.* at 14-16.

In sum, I agree with Judge Roberts regarding the ALJ's assessment of the medical opinion evidence. The ALJ provided good reasons for weighing the medical opinions as he did. These reasons and the ALJ's RFC finding are supported by substantial evidence in the record as a whole.

**B.    *Zortman's Subjective Complaints***

Zortman argues that her subjective complaints are consistent with Dr. Lukken's opinion and that if Dr. Lukken's opinion is given proper weight, then her subjective complaints should also be considered credible and supported by the medical evidence. For the reasons described above, I find that the ALJ did not err in assigning less than controlling weight to Dr. Lukken's opinion. Zortman does provide any other criticisms to the ALJ's analysis of her subjective complaints.

Having conducted a de novo review, I agree with Judge Roberts that the ALJ's reasons for discrediting the severity of Zortman's subjective complaints are supported by substantial evidence in the record as a whole. *See* Doc. No. 19 at 21-27. The ALJ considered the *Polaski* factors and found that her work-related limitations were not as severe as alleged. The ALJ properly rejected the severity of Zortman's symptoms and limitations as alleged.

**C.    *Hypothetical Question to the VE***

Zortman's last objection also relies on a finding that Dr. Lukken's opinion should have been given greater weight. As stated above, I find that the ALJ gave good reasons

for giving his opinion less than controlling weight, which are supported by substantial evidence in the record as a whole. Zortman makes no other arguments as to why the ALJ's hypothetical question to the VE was defective. The ALJ provided hypothetical questions to the VE based on both the limitations that were ultimately adopted in the RFC and the limitations identified by Dr. Lukken in his opinion. Having given Dr. Lukken's opinion less than controlling weight, the ALJ was justified in relying on the hypothetical containing only the limitations the ALJ found were supported by the record.

Having conducted a de novo review, I find no error with this aspect of the ALJ's decision and agree with Judge Roberts that the hypothetical question the ALJ ultimately relied on was supported by substantial evidence in the record as a whole. *See* Doc. No. 19 at 28-30.

## V. CONCLUSION

For the reasons set forth herein:

1.  Zortman's objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **overruled**.

2.  I **accept** Judge Roberts' Report and Recommendation (Doc. No. 19) without modification. *See* 28 U.S.C. § 636(b)(1).

3.  Pursuant to Judge Roberts' recommendation:

    a.  the Commissioner's determination that Zortman was not disabled is **affirmed**; and

    b.  Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 19th day of August, 2019.

_____
Leonard T. Strand, Chief Judge